# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                         Plaintiff,

v.

D.J.H.,

                         Defendant.

Case No. 16-CR-9-JPS

ORDER

On January 12, 2016, the government filed a Juvenile Information charging the defendant, D.J.H., a juvenile male, with: (1) two counts of motor vehicle robbery and one count of attempted motor vehicle robbery, in violation of 18 U.S.C. §§ 2119(1)-(2); (2) two counts of brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii)-(2); and (3) one count of discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii)-(2). (Docket #1). These charges arise out a series of three incidents involving a .38 special revolver that occurred over the course of approximately two hours on November 15, 2015. (Docket #13 at 2-5). D.J.H., who was seventeen (17) at the time of the alleged carjackings, is claimed to have been the gunman on all three occasions. (Docket #13 at 5; Docket #5; Docket #4 at 2).

Pursuant to 18 U.S.C. § 5032, the government filed both a certification to proceed under the Federal Juvenile Delinquency Act ("JDA"), 18 U.S.C. § 5031 *et seq.* (Docket #5), and a motion for the mandatory transfer of these proceedings to adult criminal prosecution (Docket #6). The government filed the motion for mandatory transfer on the grounds that D.J.H. has previously

been convicted[1] as a juvenile of Armed Robbery with Threat of Force, as Party to a Crime, in violation of Wis. Stats. §§ 943.32(2) and 939.50. (Docket #13 at 18). This juvenile conviction stemmed from two separate robberies that occurred in September of 2013 in which D.J.H. and a co-actor used a .357 pellet gun to steal a vehicle, purse, wallet, keys, and cell phones from two victims. (Docket #13 at 6-7). D.J.H. admitted to being the gunman during one of these incidents. (Docket #13 at 7).

The government argues that transfer is mandatory because D.J.H.'s current carjacking charges and prior armed robbery conviction as a juvenile have, as an element thereof, the use, attempted use, or threatened use of physical force. *(See generally* Docket #13). The defense argues, *inter alia*, that in light of *Johnson v. United States*, — U.S. —, 135 S. Ct. 2551 (2015), neither D.J.H.'s prior conviction nor current charges serve as proper bases for transfer under § 5032. (*See generally* Docket #16).

The government's motion for mandatory transfer is now fully briefed and ripe for adjudication. (*See* Docket #13, #16, #17). For the reasons described herein, the Court will grant the government's motion and transfer D.J.H. to adult criminal prosecution.

2.    ANALYSIS

For the sake of analytical clarity, the Court will first address the statutory framework embodied in § 5032. Thereafter, the Court will analyze whether D.J.H. must be transferred to adult criminal prosecution pursuant to that statute.

---

[1] More precisely, the government explains that D.J.H. entered an admission to a Juvenile Petition charging him with said offenses and was adjudicated delinquent as to Count One: Armed Robbery-Threat of Force, Party to a Crime (Docket #13 at 18).

### 2.1 The Mandatory Transfer Statute—18 U.S.C. § 5032

Mandatory transfer of juveniles to adult criminal prosecution is governed by 18 U.S.C. § 5032. This verbose statute is far from a model of clarity. *Cf. United States v. A.S.R.*, 81 F. Supp. 3d 709, 714 (E.D. Wis. 2015) ("[T]his is about as dysfunctional…a statute…[as] you could find.") (internal citations omitted). Nonetheless, the statute provides that the transfer of a juvenile to adult prosecution is mandatory if three requirements are satisfied:

(1) the juvenile defendant is charged in the instant case with committing a crime after his sixteenth birthday;

(2) the charged crime is "a felony offense that has as an element thereof the use, attempted use, or threatened use of physical force against the person of another, or that, by its very nature involves a substantial risk that physical force against the person of another may be used in committing the offense, or would be [one of several enumerated offenses]"; and

(3) the juvenile defendant "has previously been found guilty of an act which if committed by an adult would have been one of the offenses set forth in this paragraph or an offense in violation of a State felony statute that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed."

18 U.S.C. § 5032.[2]

The first requirement's meaning is unambiguous and the parties do not dispute that it is satisfied in this case because D.J.H. was seventeen (17) at the time he allegedly committed the crimes charged in this case. (*See* Docket #1; Docket #5; Docket #4 at 2).

The second requirement for mandatory transfer, according to the plain language of the statute, is satisfied if the crime charged in the instant case is

---

[2]Section 5032 also provides for permissive (as opposed to mandatory) transfer in certain circumstances. *See* 18 U.S.C. § 5032; *Impounded*, 117 F.3d 730, 732 (3d Cir. 1997). The parties do not address permissive transfer in this case.

a felony that either: (1) has, as an element thereof, the use, attempted use, or threatened use of force (hereinafter, the "force clause"); (2) involves a substantial risk that physical force would be used in its commission (hereinafter, the "residual clause"); or (3) is one of several enumerated offenses. 18 U.S.C. § 5032. This requirement contains language that is "virtually identical" to the definition of "crime of violence"[3] embodied in both 18 U.S.C. § 16 and in the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B) (hereinafter "the ACCA"). *See United States v. M.C.E.*, 232 F.3d 1252, 1256–57 (9th Cir. 2000) (citing *Taylor v. United States*, 495 U.S. 575, 600–02 (1990)); *Impounded*, 117 F.3d 730, 738 n.12 (3d Cir. 1997). However, in light of the Supreme Court's decision that ACCA's residual clause is unconstitutionally vague, *see Johnson*, 135 S. Ct. at 2555–56, and the Seventh Circuit's decision that the residual clause embodied in 18 U.S.C. § 16 is unconstitutional under *Johnson*, *see United States v. Vivas-Ceja*, 808 F.3d 719, 723 (7th Cir. 2015), the government does not rely—and nor will the Court—on the residual clause embodied in Section 5032 when determining whether any of the charges and/or convictions in this case constitute crimes of violence. (*See* Docket #13).

The third requirement for mandatory transfer is confusing, though the parties do not contest its interpretation. *See* 18 U.S.C. § 5032; (*see also* Docket #13 at 9; Docket #16 at 2). *But see A.S.R.*, 81 F. Supp. 3d at 713-14 ("The defendant argues that the offenses set forth in that paragraph include only those specifically enumerated."); *United States v. Juvenile Male No. 1*, 47 F.3d 68, 69 (2d Cir. 1995) (explaining that a prior conviction satisfies the

---

[3]For the sake of simplicity, the Court will likewise refer to the transferrable crimes that satisfy the force clause under 18 U.S.C. § 5032 as "crimes of violence."

mandatory transfer provision if it is "one of the enumerated offenses supporting discretionary transfer"). In the absence of binding authority to the contrary, the Court agrees with the parties' proposed reading of Section 5032 insofar as it requires that the juvenile defendant's earlier offense be a federal or state crime that would also satisfy the mandatory transfer provision's second requirement. (*Compare* Docket #13 at 9 *with* Docket #16 at 2); *M.C.E.*, 232 F.3d at 1257; *Impounded*, 117 F.3d at 732; *United States v. David H.*, 29 F.3d 489, 493–94 (9th Cir. 1994); *United States v. Juvenile Male (JNK)*, 199 WL 427153, at *2 (6th Cir. 1999) (unpublished). In other words, as applied to this case, the mandatory transfer provision's third requirement is satisfied if D.J.H. previously committed a state or federal crime that—just like the crime charged in the instant offense—either: (1) has, as an element, the use, attempted use, or threatened use of force; or (2) is one of the enumerated offenses in § 5032.[4] *See, e.g.*, *Impounded*, 117 F.3d at 732; *David H.*, 29 F.3d at 493–94; *A.S.R.*, 81 F. Supp. 3d at 714-16.

### 2.2 Mandatory Transfer Analysis

As referenced above, the parties do not dispute that D.J.H. satisfies the first requirement of mandatory transfer under Section 5032 because he was seventeen (17) years old when he allegedly committed the carjackings underlying this criminal action. (*See* Docket #13, #16; *see also* Docket #4 at 2). The remainder of the Court's analysis will, accordingly, be dedicated to addressing whether D.J.H.'s current federal charges and prior state juvenile

---

[4] The Court reiterates that in light of: (1) the Supreme Court's ruling in *Johnson*, 135 S. Ct. at 2555–56; (2) the Seventh Circuit's ruling in *Vivas-Ceja*, 808 F. 3d at 723; and (3) the government's arguments with respect to transfer (Docket #13), the Court will not rely on the mandatory transfer provision's residual clause for the purpose of its decision herein.

conviction constitute crimes of violence so as to support transfer under Section 5032.

### 2.2.1 D.J.H.'s Current Charge of Motor Vehicle Robbery Satisfies the Force Clause of Section 5032

The government argues that the crimes charged in D.J.H.'s Juvenile Information—namely, carjacking in violation of 18 U.S.C. §§ 2119(1)-(2)—satisfy the second requirement for mandatory transfer because Section 2119 has, as an element thereof, the use, attempted use, or threatened use of physical force. (Docket #13 at 10). The defense disagrees and argues that because carjacking under Section 2119 can be committed through "intimidation," it does not categorically qualify as a transferrable offense. (Docket #16 at 6-11).

As a preliminary matter, the Court notes that the defendant analyzes this second requirement by resort to what is commonly known in the criminal law as the "categorical" approach. (Docket #13 at 10; Docket #16 at 6). The government does not explicitly endorse any particular analytical method—categorical, modified categorical, or otherwise—with respect to this issue, but impliedly relies on a categorical analysis in its reply brief.[5] (Docket

---

[5]As compared to the categorical approach, "[a] modified categorical approach applies when a statute is 'divisible'—that is, when it creates more than one crime or one crime with multiple enumerated modes of commission, some of which may be crimes of violence and some not." *United States v. McDonald*, 592 F.3d 808, 810 (7th Cir. 2010). "When the statute at issue is divisible in this sense, [courts] may look to the charging document, plea agreement, or other comparable judicial record from the underlying conviction—not to inquire into the specific conduct of the defendant[,] but for the more limited purpose of determining which category of crime the defendant committed." *Id.* Though the parties do not argue that carjacking is a divisible statute, even if the Court were to apply the modified categorical approach, there is no question that the alleged carjackings in this case were crimes of violence because they were committed with the direct use of force. (*See* Docket #3).

#16 at 10; Docket #17 at 2-5) (arguing that all of the conduct proscribed by Section 2119 satisfies the force clause).

The so-called "categorical" approach is a byproduct of a series of Supreme Court cases interpreting the ACCA. *See United States v. Johnson*, 680 F.3d 966, 983 (7th Cir. 2012) (citing *Begay v. United States*, 553 U.S. 137, 141 (2008)). At bottom, this methodology attempts to help district courts determine whether a predicate offense qualifies as a crime of violence for purpose of the ACCA's sentencing enhancements. *Id.; see also Taylor v. United States*, 495 U.S. 575, 600 (1990). However, some courts have questioned whether the ACCA methodology should apply outside of the sentencing context. *See, e.g, United States v. Devonte Hayes*, 15-CR-173-JPS-DEJ (E.D. Wis. Nov. 30, 2015), *United States v. Standberry*, No. 3:15-CR-102-HEH, 2015 WL 5920008, at *1 (E.D. Va. Oct. 9, 2015); *cf. United States v. Rogers*, 804 F.3d 1233, 1236 (7th Cir. 2015) ("The 'elements-centric' categorical approach is an established method of evaluating whether prior convictions count for purposes of some sentence-enhancement statutes, most notably the Armed Career Criminal Act."). Though the Court acknowledges other courts' reservations[6] with applying the ACCA's framework of analysis to the transfer issue, the Court will, nonetheless, adopt a categorical approach to

_____

[6]Particularly, the language in Section 5032 might suggest that the ACCA approach is inappropriate. *Compare* 18 U.S.C. § 5032 (referencing the commission of an "act") *with* 18 U.S.C. § 924(e) (relying on the word "conviction"); *see also Taylor*, 495 U.S. at 602 ("We think the only plausible interpretation of § 924(e)(2)(B)(ii) is that, like the rest of the enhancement statute, it generally requires the trial court to look only to the fact of *conviction* and the statutory definition of the prior offense.") (emphasis added).

Case 2:16-cr-00009-JPS   Filed 04/01/16   Page 7 of 25   Document 18

determine whether Section 2119 qualifies as a crime of violence under the force clause of Section 5032.[7]

"Under the categorical approach…the focus is not on the facts of the defendant's particular crime, but only on the fact of conviction and the essential elements of the offense." *United States v. Sonnenberg*, 628 F.3d 361, 364 (7th Cir. 2010). In other words, courts "must look only to the fact of conviction and the statutory definition of the prior offense, and do not generally consider the particular facts disclosed by the record of conviction." *United States v. Woods*, 576 F.3d 400, 403 (7th Cir. 2009) (internal citations omitted) (internal quotation marks omitted). When viewing these essential elements, the Court must determine whether the offense in question—here,

---

[7]Notably, some district courts presented with this question have determined that carjacking in violation of Section 2119 is a divisible statute. *See, e.g., United States v. D-1 Bijan Woodley*, No. 15-CR-20007, 2015 WL 7770859, at *3 (E.D. Mich. Dec. 3, 2015) ("[T]his Court is bound by Sixth Circuit precedent which suggests that the… carjacking statute [is] divisible."); *Hayes*, 15-CR-173, slip op. at *11; *United States v. Evans*, No. 5:15-CR-57-H, 2015 WL 6673182, at *6 (E.D.N.C. Oct. 20, 2015). Other courts have analyzed the statute as *either* a divisible or indivisible statute. *See e.g., United States v. Davis,* No. 15-20564, 2015 WL 8311538, at *2 (E.D. Mich. Dec. 9, 2015); *United States v. Mills*, No. 3:15-CR-00055-MOC, 2015 WL 6672537, at *3 (W.D.N.C. Oct. 30, 2015)*; United States v. Cruz-Rivera*, No. 3:15-CR-00486 JAF, 2015 WL 6394416, at *2 (D.P.R. Oct. 21, 2015). Yet others have analyzed it solely as an indivisible offense. *See e.g., United States v. Tsarnaev*, No. CR 13-10200-GAO, 2016 WL 184389, at *18 (D. Mass. Jan. 15, 2016); *cf. Rendon v. Holder*, 764 F.3d 1077, 1085–86 (9th Cir. 2014) ("Any statutory phrase that— explicitly or implicitly—refers to multiple, alternative means of commission must still be regarded as indivisible if the jurors need not agree on which method of committing the offense the defendant used….To be clear, it is black-letter law that a statute is divisible only if it contains multiple alternative elements, as opposed to multiple alternative means."); *accord United States v. Fuertes*, — F.3d — , No. 13-4755, 2015 WL 4910113, at *8 (4th Cir. Aug. 18, 2015) (following *Rendon*). Regardless of the approach these courts have used, each have reached the same conclusion: that carjacking under Section 2119 is a crime of violence. *(See infra,* Part 2.2.1 at 10*)*.

Case 2:16-cr-00009-JPS   Filed 04/01/16   Page 8 of 25   Document 18

carjacking under Section 2119—has an element of "physical force."[8] 18 U.S.C. § 5032. The Court concludes that it does.

"To convict a defendant of carjacking, the Government must prove that the defendant: (1) with intent to cause death or serious bodily harm; (2) took a motor vehicle; (3) that had been transported, shipped, or received in interstate or foreign commerce; (4) from the person or presence of another; (5) by force and violence or intimidation." *United States v. Taylor*, No. 09-5517, 2016 WL 537444, at *29 (6th Cir. Feb. 11, 2016) (citing 18 U.S.C. § 2119). Thus, "the statute clearly proscribes two methods of carjacking—by 'force and violence,' or by 'intimidation.'" *United States v. Sandoval*, No. 2-15-CR-159-JCM-NJK, 2016 WL 632212, at *3 (D. Nev. Feb. 17, 2016) (citing 18 U.S.C. § 2119).

---

[8] The defendant argues that under *Johnson v. United States*, "physical force" under Section 5032 means "violent force." (Docket #16 at 7); *Johnson v. United States*, 559 U.S. 133, 140 (2010) ("We think it clear that in the context of [the ACCA's] statutory definition of 'violent felony,' the phrase 'physical force' means violent force—that is, force capable of causing physical pain or injury to another person."). On the one hand, as the government points out in its reply brief, it is unclear whether *Johnson*—which focused on interpreting the ACCA—applies to Section 5032. (Docket #54 at 5). This is particularly so because Section 5032 does not employ the word "violent felony" like the ACCA. *Compare* 18 U.S.C. § 5032 *with* 18 U.S.C. § 924(e)(2)(B). On the other hand, the Court recognizes the persuasive value of interpretations of similarly worded texts and/or statutory language. *See United States v. Templeton*, 543 F.3d 378, 380 (7th Cir. 2008). Regardless, because the outcome of this case does not turn on whether "physical force" is equivalent to "violent force," the Court need not delve into the merits of this argument. *Cf. Hayes*, 15-CR-173, slip op. at *7 ("The defendants have not cited any case—let alone one from the Seventh Circuit—holding that 'physical force' under § 924(c)(3)(A) must involve violent force, and nothing in § 924(c)(3)(A) indicates that such a meaning should be engrafted to the statute.").

Case 2:16-cr-00009-JPS   Filed 04/01/16   Page 9 of 25   Document 18

Though the Seventh Circuit has not addressed this precise issue—particularly in wake of *Johnson*, 559 U.S. 133[9]—every court to decide whether carjacking has, as an element, the use, attempted use, or threatened use of force has answered that question in the affirmative. *See, e.g.*, *Sandoval*, No. 2-15-CR-159-JCM-NJK, 2016 WL 632212, at *3; *United States v. White*, No. 2:15-CR-29-GMN-VCF, 2016 WL 356028, at *3 (D. Nev. Jan. 28, 2016); *Evans*, No. 5:15-CR-57-H, 2015 WL 6673182, at *8; *Tsarnaev*, No. CR 13-10200-GAO, 2016 WL 184389, at *18; *Davis*, No. 15-20564, 2015 WL 8311538, at *2; *D-1 Bijan Woodley*, No. 15-CR-20007, 2015 WL 7770859, at *3; *Hayes*, 15-CR-173, slip op. at *11; *Mills*, No. 3:15-CR-00055-MOC, 2015 WL 6672537, at *3; *Cruz-Rivera*, No. 3:15-CR-00486 JAF, 2015 WL 6394416, at *2; *Evans*, No. 5:15-CR-57-H, 2015 WL 6673182, at *6; *see also United States v. Moore*, 43 F.3d 568, 572–73 (11th Cir. 1994) (finding that carjacking was a crime of violence under the force clause of 18 U.S.C § 924(c)(3)(A)). *But see United States v. Singleton*, 16 F.3d 1419, 1423 (5th Cir. 1994) (finding that "[c]arjacking is always and without exception a 'crime of violence'" under the residual clause).

To be sure, D.J.H. does not argue that carjacking by "force and violence" does not satisfy the force clause. Rather, D.J.H. argues that carjacking cannot qualify as a categorical crime of violence because it can be accomplished by "intimidation." (Docket #16 at 6-11; *see also* 18 U.S.C. § 2119). According to D.J.H.'s theory, both the ordinary meaning of

---

[9]In *Dawkins v. United States*, 809 F.3d 953, 954 (7th Cir. 2016), the defendant had been sentenced as a career offender as a result of his prior of convictions of residential burglary *and* carjacking. However, on appeal, the defendant *only* challenged the lower court's reliance on his residential burglary charge to support his ACCA sentence. *Id.*

Case 2:16-cr-00009-JPS   Filed 04/01/16   Page 10 of 25   Document 18

"intimidation" and the Seventh Circuit's decision in *United States v. Ellis*, 622 F.3d 784, 788 (7th Cir. 2010), *as amended* (Sept. 27, 2010), suggest that carjacking by "intimidation" can be accomplished *without* physical force. (*See* Docket #16 at 6-11).

Contrary to the defendant's position, however, "the Seventh Circuit has repeatedly held that intimidation refers to a threatened use of physical force." *United States v. Enoch*, No. 15 CR 66, 2015 WL 6407763, at *2 (N.D. Ill. Oct. 21, 2015) (collecting cases) (holding that even though Hobbs Act robbery could be accomplished by "intimidation" it was nonetheless a crime of violence under the force clause of 18 U.S.C. § 924(a)). Specifically, when interpreting similar language in the context of federal bank robbery—18 U.S.C. § 2113—the Seventh Circuit has reasoned that "[i]ntimidation exists when an [offender's] words and actions would cause an ordinary person to feel threatened, by giving rise to a reasonable fear that resistance or defiance will be met with force." *United States v. Gordon*, 642 F.3d 596, 598 (7th Cir. 2011) ("To obtain a conviction for bank robbery, the government had to prove that the money was taken 'by force and violence, or by intimidation.'") (citing 18 U.S.C. § 2113(a)); *see also United States v. Thornton*, 539 F.3d 741, 748 (7th Cir. 2008) ("Intimidation is the threat of force…which exists in situations where the defendant's conduct and words were calculated to create the impression that any resistance or defiance…would be met with force"); *United States v. Hill*, 187 F.3d 698, 700-01 (7th Cir. 1999) ("[T]he 'defendant's conduct must constitute a threat'….A defendant's conduct will be considered a threat if it gives the impression that any resistance would be met by physical force.") (internal citations omitted); *United States v. Smith*, 131 F.3d 685, 688 (7th Cir. 1997) ("[I]ntimidation is a reasonable fear that resistance

will be met with physical force."); *United States v. Jones*, 932 F.2d 624, 625 (7th Cir. 1991) ("Intimidation means the threat of force.")).

D.J.H. mistakenly relies on *Ellis*, 622 F.3d at 788, in which the Seventh Circuit concluded that Indiana's felony intimidation statute was not a crime of violence under the ACCA's force clause. (Docket #16 at 8-11). D.J.H. argues that, under *Ellis*, intimation does not require a threat to inflict a physical injury, but instead can be satisfied by threats that amount to nonphysical injuries. (Docket #16 at 8).

This argument is flawed for two reasons. First, it fails to recognize that the Seventh Circuit's holding in *Ellis* explicitly turned on the Indiana Supreme Court's interpretation of a state statute. *See Ellis*, 622 F.3d at 788 (citing *Meek v. State*, 205 Ind. 102, 185 N.E. 899 (1933)). In *Meek*, the Indiana Supreme Court ruled that "the then-operative blackmail statute, which criminalized 'threat[s] to do *any injury* to the person or property of any one'" included "a threat to invade any right for the invasion of which an action in damages would lie." *Id.* at 799 (citing *Meeks*, 185 N.E. at 901) (emphasis added). The Indiana Supreme Court thus concluded that injury in the form of "mental pain, anguish, and suffering" was a sufficient for liability under the statute. *Id.* The Seventh Circuit reiterated that "*Meeks* teaches that 'an injury to the person' for purposes of Indiana's threat statute encompasses threats of physical *and* nonphysical injuries." *Id.* (emphasis added). Second, nowhere in *Ellis* did the court attempt to distinguish, or even cite to, the long line of precedent that it had established with respect to its interpretation of "intimidation" in the context of federal bank robbery. The defendant points the Court to no cases overruling or casting doubt on those holdings. This Court therefore: (1) interprets *Ellis* to rest squarely on the Indiana Supreme

Case 2:16-cr-00009-JPS   Filed 04/01/16   Page 12 of 25   Document 18

Court's interpretation of the Indiana intimidation statute; and (2) finds more persuasive value in the long, uninterrupted line of Seventh Circuit case law which has interpreted "intimidation" in the context of a similar federal criminal statute—namely, bank robbery—as requiring a "threat of force." *Jones*, 932 F.2d at 625.

For the foregoing reasons, the Court concludes that carjacking under 18 U.S.C. § 2119 has as an element the use, attempted use, or threatened use of physical force, and thus satisfies the second requirement for mandatory transfer under Section 5032.

### 2.2.2 D.J.H.'s Prior Armed Robbery with Threat of Force, as Party to a Crime, Conviction Satisfies the Force Clause of Section 5032

Finally, the government argues that D.J.H.'s prior juvenile conviction for Armed Robbery with Threat of Force, as Party to a Crime, in violation of Wis. Stats. §§ 943.32(2) and 939.05, satisfies the third requirement for mandatory transfer because: (1) it likewise satisfies the force clause embodied in Section 5032; and (2) it would be an enumerated offense under 18 U.S.C. § 5032 "if a circumstance giving rise to Federal jurisdiction had existed." (Docket #13 at 10-11). The defense argues that D.J.H.'s conviction as a party to a crime, *i.e.*, under Wisconsin's PTAC statute, Wis. Stats. § 939.05, cannot support transfer because: (1) PTAC liability encompasses conspirator liability; and (2) conspirator liability does not categorically require the use, attempted use, or threatened use of physical force for purpose of mandatory

Case 2:16-cr-00009-JPS   Filed 04/01/16   Page 13 of 25   Document 18

transfer. (Docket #16 at 12-20). Again, both parties rely on the categorical approach for this analysis.[10] (*See* Docket #13 at 12; Docket #16 at 12).

The Court agrees that to determine whether D.J.H.'s prior juvenile conviction satisfies the force clause it must "look to the elements or essential nature of the criminal offense for which the juvenile was convicted." *David H.*, 29 F.3d at 493-94 ("Mandatory transfer is triggered by a prior conviction of *'a felony offense that has as an element thereof* the use, attempted use, or threatened use of physical force against the person of another.…'") (emphasis in original); *M.C.E.*, 232 F.3d at 1255 ("[I]n analyzing this [transfer] question, we do not look to the specific conduct underlying M.C.E.'s conviction. Rather, we must take the 'categorical' approach, focusing narrowly on the elements of the crime, as defined by the statutory language."); *United States v. A.F.F.*, 144 F. Supp. 2d 809, 814-15 (E.D. Mich. 2001) ("Generally, when determining whether an offense will serve as a statutory predicate, appellate courts prescribe a categorical approach, which discourages an examination of underlying conduct."). Thus, the Court must decide whether D.J.H.'s prior juvenile conviction is categorically a crime of violence by looking only to "the fact of [D.J.H.'s] conviction and the essential elements of the offense" to which he pled guilty. *Sonnenberg*, 628 F.3d at 364.

D.J.H. pled guilty to Count One of a juvenile petition charging him with Armed Robbery with Threat of Force, as Party to a Crime, in violation

---

[10]In the alternative, the government also argues that even if a modified categorical approach is appropriate, D.J.H.'s prior conviction satisfies the force clause. (Docket #13 at 17). The Court need not address this alternative argument because, as described more fully below, D.J.H.'s prior juvenile conviction is a categorical crime of violence.

of Wis. Stats. §§ 943.32(2) and 939.05, respectively. (Docket #13 at 19; Docket #4 at 1).

Wisconsin's armed robbery statute, Wis. Stat. § 943.32(2), provides:

(1)     Whoever, with intent to steal, takes property from the person or presence of the owner by either of the following means is guilty of a Class E felony:

> (a)     *By using force* against the person of the owner with intent thereby to overcome his or her physical resistance or physical power of resistance to the taking or carrying away of the property; *or*

> (b)     *By threatening the imminent use of force* against the person of the owner or of another who is present with intent thereby to compel the owner to acquiesce in the taking or carrying away of the property.

(2)     Whoever violates sub. (1) *by use or threat of use of a dangerous weapon*, a device or container described under s. 941.26(4)(a) or any article used or fashioned in a manner to lead the victim reasonably to believe that it is a dangerous weapon or such a device or container is guilty of a Class C felony.

Wis. Stat. § 943.32 (emphasis added). In addition, Wisconsin's PTAC statute, Wis. Stat. Ann. § 939.05, states:

(1)     Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although the person did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.

(2)     A person is concerned in the commission of the crime if the person:

(a)     Directly commits the crime; or

(b)     Intentionally aids and abets the commission of it; or

(c)     Is a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it.…

Wis. Stat. § 939.05.

There can be no question that Wis. Stat. § 943.32(2) has, as an element, the use or threatened use of force. *See* Wis. Stat. § 943.32(2); c*f. David H.*, 29 F.3d at 493 (concluding that robbery in violation of California Penal Code § 211 included as an element the "'threatened use of physical force against the person of another.'") (citing 18 U.S.C. § 5032). The jury instruction governing liability under this statute specifically contemplates the use or threatened use of force during the commission of a robbery. *See* Wis. JI-Criminal No. 1480: Armed Robbery: By Use or Threat Of Use of A Dangerous Weapon—§ 943.32(2) (2005). More precisely, the jury instruction for Wis. Stat. § 943.32(2) states,

> Armed robbery, as defined in § 943.32(2)…is committed by one who, with the intent to steal and by use or threat of use of a dangerous weapon, takes property form the person or presence of the owner *by [using force against the person* of the owner with intent to overcome physical resistance or physical power of resistance to the taking or carrying away of the property] *[or] [by threatening the imminent use of force* against the person of the owner with intent to compel the owner to submit to the taking or carrying away of the property].

*See* Wis. JI-Criminal No. 1480: Armed Robbery: By Use or Threat Of Use of A Dangerous Weapon—§ 943.32(2) (2005); Wis. Stat. § 943.32(2). Indeed,

neither of the parties argue that Wis. Stat. § 943.32(2) fails to satisfy the force clause.

Instead, the government and D.J.H. dispute the extent to which the PTAC aspect of D.J.H.'s armed robbery conviction affects the transfer calculus. On the one hand, the government argues that PTAC liability does *not* change the character of the crime for which D.J.H. was convicted. (Docket #13 at 12-19). And, according to the government, if the Court reads through the PTAC modifier to the essential elements of the armed robbery conviction, D.J.H.'s prior juvenile offense constitutes a transferrable offense under Section 5032. (Docket #13 at 12-19). On the other hand, D.J.H. argues that because PTAC liability encompasses conspirator liability, D.J.H.'s conviction as party to an armed robbery cannot fairly be categorized as a crime of violence. (Docket #16 at 12-20). In order to provide a thorough categorical analysis with respect to the third requirement of Section 5032, the Court must first provide an overview of the nature, history, and purpose of Wisconsin's PTAC statute.

The Wisconsin Supreme Court has, on various occasions, expounded upon its interpretation of PTAC liability. *See, e.g., State v. Horenberger*, 119 Wis. 2d 237, 243, 349 N.W.2d 692, 695 (1984); *State v. Hecht*, 116 Wis. 2d 605, 619, 342 N.W.2d 721, 729 (1984); *Holland v. State*, 91 Wis. 2d 134, 140, 280 N.W.2d 288, 291 (1979). In the seminal case of *Holland v. State*, the Wisconsin Supreme Court recognized that due process requires "that the prosecution prove *each essential element* of the offense beyond a reasonable doubt." *Id.* at 138 (emphasis added). The defendant in *Holland* thus challenged, on state grounds, the constitutionality of the PTAC jury instruction, which did (and to this day does) not require jurors to unanimously agree as to the *manner* in

which the defendant committed the crime in question, *i.e.*, by direct commission, aiding/abetting, or conspiring. *Id.*; *see also* Wis. JI-Criminal No. 402: Party to a Crime (2005). Thus, when presented with the issue of whether the standard PTAC instruction "violate[d] the defendant's right to a unanimous verdict guaranteed by the Wisconsin Constitution," the court was forced to determine the extent to which a "party to crime" charge affected the elements of an alleged criminal violation. *Holland*, 91 Wis. 2d at 138.

The *Holland* court explained that PTAC's statutory design reflected the Wisconsin legislature's decision to abolish the common law distinction between principle and accessory liability. *Id.* at 140-41 ("The legislative judgment embodied in sec. 939.05, Stats." is "that those concerned in the commission of a crime are equally liable along with the one who directly committed it...."). In this sense, "the party to a crime statute does *not* create three separate and distinct offenses." *Id.* at 143 (emphasis added). Rather, when a defendant is charged with a crime—like armed robbery—and as party thereto, there is "a *single* offense for which the defendant could be found liable in three alternative ways—direct commission, aiding and abetting, and conspiracy." *Id.* (emphasis added). And, therefore, whether a defendant is alleged to be liable as direct actor, an aider and abetter, and/or a conspirator is of no legal significance because each of these actors is equally liable for their commission of the offense in question. *Id.* at 143. Indeed, the actionable conduct for the purpose of PTAC is *participation* in the *underlying crime* charged. *Id.* ("The jury unanimously found participation, and it was not necessary that it be agreed as to the theory of participation."); *Lampkins v. Gagnon*, 710 F.2d 374, 377 (7th Cir. 1983) ("Wisconsin interprets this crime as 'participation.'"). What is more, because each theory of liability stands on

equal grounds, the court made clear that the government need not cite to the PTAC statute in the operative charging documents for a defendant to be convicted as a "party to crime." *Id.* at 142. ("This court has commended the practice of including the party to a crime statute in the information but…one may be convicted as a party to crime even though the information makes no mention of sec. 939.05.…").

In light of the *Holland* court's finding that both direct and indirect participants in a state criminal offense are equally liable for criminal conduct, the Wisconsin Supreme Court concluded that "[u]nanimity is required *only* with respect to the ultimate issue of the defendant's guilt or innocence of the crime charged.…" *Id.* at 143. In other words, "the *method of complicity* in an offense under the party to a crime statute [i]s *not an essential element* of the offense upon which the jury must agree unanimously." *Horenberger*, 119 Wis. 2d at 243 (emphasis added). And, because the manner of participation is not an "essential element" of any given offense, the PTAC charge "does not add to or alter the elements of the offense to which the defendant is charged as a party." *Id.*

Four years after the Wisconsin Supreme Court decided *Holland*, the Seventh Circuit announced that Wisconsin's PTAC statute likewise passed constitutional muster under the federal Due Process Clause. *See Lampkins*, 710 F.2d at 377 ("We find no constitutional infringement in Wisconsin's decision to make participation in a crime a criminal act."). Relying on the *Holland* court's interpretation of the PTAC statute, the Seventh Circuit emphasized that "state[s] ha[ve] the power, within constitutional bounds to define its crimes as it wishes." *Id.* (citing *Mabra v. Gray*, 518 F.2d 512, 514 n. 3 (7th Cir.), *cert. denied*, 423 U.S. 1023 (1975)). Moreover, the court found that "[t]he

distinctions between aiding, abetting, and party to a conspiracy" under PTAC are "no more conceptually distinct than aid[ing], abet[ting], counsel[ing], command[ing], induc[ing], or procur[ing]" under 18 U.S.C. § 2(a)." *Id.* at 387. Thus, the fact that juries in Wisconsin need not unanimously agree as to whether the defendant was a direct or indirect participant in the alleged crime does not violate federal constitutional principles. *Id.*

The Seventh Circuit revisited Wisconsin's PTAC statute again in *United States v. Groce*, 999 F.2d 1189, 1191 (7th Cir. 1993). In *Groce*, the defendant argued "that the 'party to a crime' nature of his [Wisconsin] burglary conviction remove[d] it from the statutory definition" of a crime of violence under the ACCA. *Id.* The Seventh Circuit disagreed with this argument. *Id.* at 1992. Instead, the *Groce* court concluded that "burglary as party to a crime is essentially analogous to aiding and abetting a burglary." *Id.* at 1991. And, since "both federal law and Wisconsin state law punish an aider and abettor as a principal," the defendant's burglary conviction was categorized as a violent felony within the terms of the ACCA. *Id.* at 1991-92.

In this case, the categorical approach demands that the Court look to the "essential elements" of the offense for which D.J.H. was convicted as a youth. *Sonnenberg*, 628 F.3d at 364. *Holland* and its progeny make clear that PTAC liability does not affect the elements of the crime for which the defendant is ultimately charged. *See Horenberger*, 119 Wis. 2d at 243; *State v. Hecht*, 116 Wis. 2d at 619; *Holland*, 91 Wis. 2d at140. As in *Groce*, the addition of the PTAC modifier onto D.J.H.'s state Armed Robbery with Threat of Force conviction does not alter the essential elements of statute for which D.J.H. was convicted. And, as discussed above, Wisconsin's armed robbery

statute is a crime of violence under the force clause of Section 5032. Thus, the third requirement for D.J.H.'s mandatory transfer is properly supported by his juvenile conviction.

The Court's reading of *Holland* likewise explains why it cannot accept the argument that D.J.H.'s potential participation as a conspirator in the underlying juvenile conviction affects the Court's decision. This argument ignores both the nature of PTAC liability and the Court's obligation to conduct an "element centric" analysis of D.J.H.'s juvenile conviction. *See Holland*, 91 Wis. 2d at 140-42*; Rogers*, 804 F.3d at 1236. Given the *Holland* court's ruling that PTAC liability does *not* alter, add, or in any way affect the "essential elements" of the underlying crime for which D.J.H. was convicted, the Court has no other option than to conduct the categorical analysis solely by reference to the criminal conduct embodied in Armed Robbery with Threat of Force. *See Holland*, 91 Wis. 2d at 138-42; *see also Sonnenberg*, 628 F.3d at 364; *Groce*, 999 F.2d at 1191 (concluding that a defendant's conviction of burglary as party to a crime did not affect the court's categorical analysis).

In light of the abolished distinction between principles and accessories to a crime, neither Wisconsin nor the federal prosecutors are required to charge a defendant as a "party" to a crime. *See United States v. Galiffa*, 734 F.2d 306, 312 (7th Cir. 1984) (noting that 18 U.S.C. § 2 need not be charged in the indictment); *Holland*, 280 N.W.2d at 292 (noting the same with respect to the PTAC statute in Wisconsin). The fact that the Wisconsin legislature, just like the federal government, has decided to hold principles and accessories equally liable under the law cannot affect this Court's element-based analysis under Section 5032. *Id.* Such a conclusion would render any Wisconsin conviction as categorically falling outside the bounds of the crime of violence

definition, a result wholly unsupported by case law. Thus, the Court concludes that Armed Robbery with Threat of Force, as Party to a Crime, support D.J.H.'s transfer under Section 5032.

Though it is not necessary to this Court's decision, the government also argues that D.J.H.'s juvenile conviction qualifies him for transfer because it is an enumerated offense under § 5032. (Docket #13 at 11). In other words, the government argues that because: (1) Wis. Stat. § 943.32(2) is analogous to, if not more narrow than, the federal robbery statute, 18 U.S.C. § 2111; and (2) the federal robbery statute,18 U.S.C. § 2111, is an enumerated offense under 18 U.S.C. § 5032, this means that Wis. Stat. § 943.32 would be an enumerated offense under 18 U.S.C. § 5032 "if a circumstance giving rise to Federal jurisdiction had existed."[11] (Docket #13 at 11). Taking a different approach, D.J.H. focuses on the PTAC aspect of his conviction. (Docket #16 at 12-15). Specifically, he argues that since PTAC: (1) is not an enumerated offense under the mandatory transfer statute; and (2) is actually broader than its federal counterpart embodied in 18 U.S.C. § 2, D.J.H.'s prior juvenile conviction is not an enumerated offense under Section 5032 that supports transfer. (Docket #16 at 12-15).

The Court agrees with the government's conclusion that D.J.H. was indeed convicted of state offense (Armed Robbery with Threat of Force, as Party to a Crime) that would have been an enumerated federal offense (Robbery) "if a circumstance giving rise to Federal jurisdiction has existed."

---

[11]This language is taken directly from Section 5032's third requirement, which states that transfer is warranted if the juvenile defendant "has previously been found guilty of…an offense in violation of a State felony statute that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed." 18 U.S.C. § 5032.

*See* 18 U.S.C. § 2111 ("[W]hoever, within the special maritime and territorial jurisdiction of the United States, by force and violence, or by intimidation, takes or attempts to take from the person of presence of another anything of value shall be imprisoned not more than fifteen years.").

The Court rests this conclusion on three grounds. First, the federal Armed Robbery statute is, in all material respects, equivalent if not broader than D.J.H.'s conviction for Armed Robbery with Threat of Force. *Compare* 18 U.S.C. § 2111 (which does not require the threat of force or use of a dangerous weapon) *with* Wis. Stat. § 943.32(2) (requiring the actual use or threatened use of force and use of a dangerous weapon). Second, the argument that Wisconsin's PTAC statute may ultimately be broader than its federal counterpart, 18 U.S.C. § 2, and, therefore, preclude transfer is unsupported by case law. In both *Groce* and *Lampkins* the Seventh Circuit indicated that no meaningful distinction between 18 U.S.C. § 2 and Wis. Stat. § 939.05 exists. *See Groce*, 999 F.2d at 1192; *Lampkins*, 710 F.2d at 387. Third, though the Court recognizes that the federal accessory statute—18 U.S.C. § 2—is not enumerated under Section 5032, the argument that Congress sought to preclude transfer for juveniles who have been convicted as accessories is entirely inconsistent with the text of mandatory transfer statute, which qualifies certain offenses as crimes of violence so long as they satisfy

Case 2:16-cr-00009-JPS   Filed 04/01/16   Page 23 of 25   Document 18

*either* the force clause *or* are an enumerated offense.[12] (*See supra*, Part 2.1); *see also M.C.E.*, 232 F.3d at 1257; *Impounded*, 117 F.3d at 732; *David H.*, 29 F.3d at 493–94; *Juvenile Male (JNK)*, 199 WL 427153, at *2. Ultimately, so long as PTAC liability does not alter the essential elements of the underlying criminal offense for which the defendant is convicted, the Court must transfer D.J.H. to adult prosecution so long as the elements of his juvenile conviction satisfy the force clause, which, as discussed at length above, is the case here. *See Sonnenberg*, 628 F.3d at 364; *Holland*, 91 Wis. 2d at140-42.

For the foregoing reasons, the Court concludes that D.J.H.'s conviction as a juvenile to Armed Robbery with Threat of Force, as Party to a Crime, in violation of Wis. Stats. §§ 943.32(2) and 939.50, has, as an element, the use, attempted use, or threatened use of physical force. In the alternative, D.J.H.'s prior conviction would be an enumerated offense under Section 5032—namely, federal Robbery—had circumstances for "giving rise to Federal jurisdiction" existed. *See* 18 U.S.C. § 5032. Thus, D.J.H.'s juvenile conviction is a sufficient basis for transfer under the third requirement of Section 5032.

---

[12]Similarly, D.J.H.'s argument that conspiracy to commit a crime of violence does not satisfy the force clause of § 5032 has no bearing on this Court's opinion. *Cf. United States v. Raupp*, 677 F.3d 756, 761 (7th Cir. 2012) (finding that conspiracy to commit a crime of violence supports an enhanced sentence under the ACCA pursuant to the application note to § 4B1.2). D.J.H. was not convicted of the inchoate crime of conspiracy, which is proscribed by an entirely distinct criminal statute. *See* Wis. Stat. § 939.31; s*ee also State v. Nutley*, 24 Wis. 2d 527, 561, 129 N.W.2d 155, 170 (1964) *overruled on other grounds by State v. Stevens*, 26 Wis. 2d 451, 132 N.W.2d 502 (1965)) (highlighting the "distinction between conspiracy as a substantive inchoate crime, and conspiracy as a theory of prosecution as a principal for a substantive consummated crime"). The Seventh Circuit has not opined on this issue, and the Court declines to render an opinion on an open question in the law upon which its holding does not rest.

3.    CONCLUSION

The Court finds that D.J.H. must be transferred to adult criminal prosecution because: (1) he was charged in the instant case with committing a crime after his sixteenth birthday; and (2) his current charge of carjacking—in violation of 18 U.S.C. § 2119—and prior conviction as a juvenile to Armed Robbery with Threat of Force, as Party to a Crime—in violation of Wis. Stats. §§ 943.32(2) and 939.50—have, as an element, the use, attempted use, or threatened use of physical force and is the state law equivalent of an enumerated offense under Section 5032. Thus, the government's motion for mandatory transfer will be granted.

Accordingly,

IT IS ORDERED that the government's motion for mandatory transfer of proceedings against the juvenile to adult criminal prosecution (Docket #6) be and the same is hereby GRANTED;

IT IS FURTHER ORDERED that the Juvenile Information (Docket #1) be and the same is ordered UNSEALED and this Mandatory Transfer Order, together with all subsequent filings not specifically ordered filed under seal shall be filed and docketed as part of the public record in this case.

Dated at Milwaukee, Wisconsin, this 1st day of April, 2016.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge